Daniel E. Thenell, OSB No. 971655
Emerson Lenon, OSB No. 123728
Thenell Law Group, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| ERIC KONZELMAN, an individual, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | (Civil Rights 1st Amendment/14th Amendment violations; Whistleblower retaliation; supplemental state law claims) |
| JEFFREY SCOTT JACKSON AS SHERIFF OF BENTON COUNTY, in his individual and official capacity, BENTON COUNTY a political subdivision of the State of Oregon, | 42 U.S.C. § 1983 ORS 659A.200(1)(b)(A) and (B) |
| Defendants. | Damages at least $1,000,000 or an amount to be proven at trial |
| | **JURY TRIAL DEMANDED** |

## INTRODUCTORY STATEMENT

1.

This action is filed by Plaintiff under 42 U.S.C § 1983 and ORS Chapter 659A for events from June 1, 2017 to the present, alleging violations of the First and Fourteenth Amendments of the United States Constitution, retaliation for participation in protected activities, and violations of the state

COMPLAINT - Page 1                                                    2018-115

1  whistleblower protections under ORS Chapter 659A.

2                                       2.

3       This Court has jurisdiction over Plaintiff's claims of violations of Federal Constitutional Rights

4  under 28 U.S.C. §§ 1331 and 1343.

5                                       3.

6       Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the defendants reside in the

7  District of Oregon and Plaintiff's claims for relief arose in this district.

8                                 **PARTIES**

9                                       4.

10      At all material times, ERIC KONZELMAN ("Plaintiff") is a citizen of the United States and

11  a resident of Benton County, Oregon. At all times material, Plaintiff worked for Defendant in Benton

12  County, Oregon.

13                                      5.

14      At all material times, JEFFREY SCOTT JACKSON ("Defendant Jackson") was the elected

15  Sheriff of Benton County, Oregon. Defendant Jackson was working under color of law on behalf of

16  the Benton County Sheriff's Office ("BCSO"), an agency of Benton County, Oregon ("County").

17  Defendant Jackson is the final policy maker for BCSO. Defendant Jackson is sued in his individual

18  and official capacities.

19                                      6.

20      At all material times, BCSO was a political subdivision of the Benton County, Oregon.

21  Defendant Benton County is a suable person under 42 U.S.C. § 1983. At all times relevant to this

22  Complaint, BCSO and Defendant County employed Defendant Jackson. At all times relevant to this

23  Complaint, Defendant Jackson was acting pursuant to Defendant BCSO's and Defendant County's

24  laws, customs, and/or policies. As the employer of Defendant Jackson, Benton County is vicariously

25  liable for all the tortious and unconstitutional acts and omissions of the Defendants committed within

26  COMPLAINT - Page 2                                                              2018-115

the course and scope of his employment, pursuant to ORS 30.265. Benton County was and is a "Public Employer" under 659A.200(6). Defendant Jackson is a final policy maker for BCSO.

7.

At all times relevant to this Complaint, Plaintiff was a "Public Employee" pursuant to ORS 659A.200(2).

8.

ORS 659A.203(1)(b)(A) and (B) states, in relevant part, it is an unlawful employment practice for any public employer to:

> Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:
> (A)    A violation of any federal or state law, rule or regulation by the state, agency or political subdivision;
> (B)    Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision;

9.

All Defendants acted under the color of law at all times relevant to this Complaint.

10.

Plaintiff is entitled to an award of attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

## FACTUAL ALLEGATIONS

11.

Plaintiff began his law enforcement career in 2005 as a reserve officer with the BCSO.

12.

Defendant Jackson, at all times relevant, was the elected Sheriff for Benton County. The Benton County Sheriff is an employee of Benton County.

/ / /

COMPLAINT - Page 3

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

13.

Plaintiff became a fully certified full-time deputy working for the BCSO in 2007.

14.

As a patrol deputy Plaintiff was a member of the Benton County Sheriff Deputy's Association ("BCDSA"). In June of 2017 several members of the BCDSA including Plaintiff approached Sergeant Peterson in the BCSO to discuss the possibility that Peterson might run against Defendant Jackson in the 2018 election. As part of this exploratory process a Facebook page was created for members of the BCDSA to register support for Sergeant Peterson and dissatisfaction with Defendant Jackson. Plaintiff was an administrator on the Facebook page. Roughly ten days after its creation, and never having been used for any purpose, the page was scheduled to be deleted. At all times relevant the meetings and discussions of political activities took place while off duty and away from the BCSO.

15.

In addition to the potential campaign for Sheriff, some of the BCDSA discussed a vote of no confidence in Defendant Jackson. Plaintiff was not present for this BCDSA meeting due to a previously arranged hunting trip. Ultimately neither the vote of no confidence nor the challenger campaign occurred despite several employees, including Plaintiff registering dissatisfaction with Defendant Jackson's tenure as Sheriff.

16.

On or about November 28, 2017, Captain Rogers sent an email to Benton County District Attorney Haroldson stating, "there may be Brady Law issues regarding Sheriff's Office Deputies." He continued, "Additionally, I was told by Sergeant Hiner, that he was told Deputy Konzelman was going to bring up the 'vote of no confidence' at a recent Association meeting but he missed the meeting."

17.

On or about December 4, 2017, Sheriff Jackson sent an email to D.A. Haroldson entitled, "Update on Potential Brady issues identified last week." In that email the Sheriff described a

COMPLAINT - Page 4

2018-115

conversation between Deputy Gordon, Corporal Schermerhorn, Undersheriff Ridler and himself. The conversation took place on November 30th. Sheriff Jackson states "Gordon explained that he wanted me to know that many members of Benton County Deputy Sheriff's Association (BCDSA) … were very upset that they were being used" to bring a vote of no confidence. "Gordon further explained that as Vice President of BCDSA he was included in conversations with Deputy Brent Iverson where Iverson acknowledged promises that were made from Sergeant Dave Peterson to Iverson, and from Iverson to Sergeant Peterson involving filing multiple grievances and initiating the vote of no confidence." These allegations by Gordon were untrue and were made for the purpose of harming Plaintiff and others. Plaintiff further has reason to believe that at the November 30th meeting Gordon informed Defendant Jackson that a Facebook page had been created to vent frustrations about Defendant Jackson. Deputy Gordon revealed the protected activities out of motivation to be promoted within the Sheriff's Office.

18.

As a result of the allegations made by Gordon, Hiner, and others, an internal investigation was opened into Peterson and Iverson. Captain Rogers requested that Sergeant Cunningham, of the Marion County Sheriff's Office assist in the investigation. As a part of this investigation Cunningham conducted interviews with several employees of the BCSO including then BCDSA Vice President Deputy Josh Gordon (Gordon is currently the President of the BCDSA) and Corporal Al Schermerhorn (current Vice President of the BCDSA). Schermerhorn told Cunningham he and Gordon provided assurances the Defendant Jackson that they would quash any vote of no confidence in the BCDSA.

19.

On or about February 2, 2018 Plaintiff arrived at work and was confronted by Undersheriff Ridler. Ridler instructed Plaintiff to follow him into the briefing room and instructed Plaintiff to speak to Cunningham. Plaintiff was not previously informed on this interview and was not informed of his right to have representation with his in the interview. Plaintiff felt the interview was compelled.

COMPLAINT - Page 5

2018-115

20.

Cunningham informed Plaintiff that the subject matter of the interview might approach matters of protected union activity. Despite his verbal assurances to the contrary, Cunningham did in fact ask Plaintiff about his role in protected union activities and other activities protected by the First Amendment. The apparent purpose of the interview was to question Plaintiff about these protected activities and/or to develop a pretext to open an investigation into Plaintiff directly. Defendant Jackson stood to benefit from an investigation into his political opponents using the pretext of an investigation into potential disparagement of the BCSO. It is widely known in the BCSO that Peterson and Plaintiff are friends.

21.

During Plaintiff's February 2nd interview with Cunningham Plaintiff was repeatedly asked about his role in the BCDSA Facebook page created in June of 2017. Cunningham repeatedly asked leading questions about Plaintiff's role in creating the page. Plaintiff did not at that time remember if he had created or administrated the page in question. Subsequent review of Plaintiff's Facebook account revealed that he had been the administrator and had scheduled the page for deletion roughly ten days after it was created. Plaintiff had no memory of the page largely due to the passage of time and the fact that the page had never been used, it had no posts, no page views, no followers, and no activity other than creation, setting a profile photo, and then deletion.

22.

During the interview, Plaintiff offered to check his Facebook app on his phone to see if that would help refresh his memory. Cunningham refused to allow Plaintiff to do so during the interview. At the close of the February 2nd interview Cunningham directed Plaintiff to write down his username and password. Plaintiff felt compelled to comply with this direction and gave over the password to his personal Facebook account. This was a violation of ORS 659A.330(1)(a).

/ / /

COMPLAINT - Page 6

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1                                             23.

2         On or about March 13, 2018 Plaintiff was informed that he was now the subject of a new

3  internal investigation into his truthfulness in the February 2nd interview. Plaintiff was placed on

4  administrative leave pending the outcome of the investigation. Plaintiff was told by BCDSA VP

5  Gordon that either Gordon or Schermerhorn would be acting as his representative. Plaintiff did not

6  then have knowledge that both Gordon and Schermerhorn had approached Defendant Jackson and

7  Undersheriff Ridler with disparaging information about Plaintiff. Neither Gordon nor Schermerhorn

8  disclosed any potential conflict of interest to Plaintiff. Defendant Jackson used Gordon and

9  Schermerhorn's disclosure of protected activities to initiate an investigation into Plaintiff.

10                                            24.

11        On or about March 16, 2018 Gordon and Plaintiff communicated by text message regarding

12 Plaintiff's interview in this second investigation. Gordon was acting in his capacity as Vice President

13 of the BCDSA. Gordon discouraged Plaintiff from bringing his private attorney to the interview.

14 Plaintiff was put off by this behavior from Gordon and opted to have Kim Lovik, who was the

15 Secretary of the BCDSA, serve as his representative. Despite clearly communicating this preference

16 to Gordon, Gordon continued to insert himself into the matter and actively kept information regarding

17 the investigation from Lovik.

18                                            25.

19        Sometime after Plaintiff asked Gordon to cease his involvement in the County's investigation,

20 Lovik walked into a closed-door meeting between Gordon and Jackson. As Lovik entered she heard

21 the two men discussing the Plaintiff. The two stopped their discussion as Lovik entered and she was

22 unable to ascertain the extent of the discussion. The BCSDA refused to allow Plaintiff's private

23 attorney to be present. This is a violation of ORS 236.350 to ORS 236.370.

24 / / /

25 / / /

26 COMPLAINT - Page 7                                                    2018-115

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

26.

On or about March 29, 2018 Plaintiff was interviewed by Captain Don Rogers with Kim Lovik and Meg Kirschnick present. Rogers questioned Plaintiff at length regarding the Facebook page and Plaintiff's subjective memory of the few days in June of 2017 during which the page was active. Plaintiff again denied having significant memories of that page. The few details which he could remember had all been triggered by questions during Cunningham interview and subsequent examinations of Plaintiff's Facebook page. Plaintiff acknowledged seeing a page in his Facebook which showed that he had scheduled the BCDSA page for deletion and even looking at that information did not trigger a memory of actually scheduling the deletion. Plaintiff acknowledged that it must have occurred but was not a significant event and that is why he did not remember it.

27.

Prior to the conclusion of the investigation into Plaintiff, on or about April 17, 2018 Gordon sent an email to Lovik and Schermerhorn and stated in part "[i]t is clear to all of us and all of them that [Plaintiff] was lying." Around this time the union board met to discuss whether the union would take action on Plaintiff's behalf. Lovik raised the possibility that the union could file an unfair labor practices complaint. Gordon became heated and insisted that Plaintiff was dishonest and that no action would be taken. A compromise was made to issue a formal request to Defendant Jackson to honor the investigation policies for future investigations. Gordon never informed Plaintiff that this course of action was decided upon, and Plaintiff doesn't know if that message was ever conveyed to the Sheriff.

28.

On June 7, 2018 Captain Rogers issued the final findings from the March 13th investigation. He found there was insufficient evidence to conclude that Plaintiff was untruthful because there was no evidence that Plaintiff intended to deceive anyone with the statements regarding the Facebook page.

/ / /

/ / /

COMPLAINT - Page 8

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

In addition to the findings Rogers also issued a report detailing his findings. Rogers stated that he asked Plaintiff if medication use may have contributed to the paucity of his memory. Rogers incorrectly stated Plaintiff adamantly denied medication use during June 2017.

29.

In the March 29 interview, Rogers asked Plaintiff if he was on light duty in June. Plaintiff acknowledged he had knee surgery in May and he was taking pain killers during the recovery period. Plaintiff recounted an event from a previous surgery, he had taken medication and forgotten an entire evening. Plaintiff was adamant that he didn't want to blame the lack of Facebook memories on pain medication, but he never denied taking medication during early June of 2017.

30.

Plaintiff knows that many other deputies have been unable to remember details when they have been interviewed as part of an internal investigation. Plaintiff has never heard of another deputy being subjected to a separate investigation because he or she could not remember details during an interview. Plaintiff alleges this is unequal treatment with no rational basis and he was subjected to investigation and reporting to the DA's office because of his support for Peterson while he contemplated running for the Sheriff's office.

31.

On or about May 8, 2018 the Benton County District Attorney's Office Brady Review Committee met and issued findings and recommendations regarding several BCSO employees including Plaintiff. The Brady Review Committee concluded that Cunningham had found Plaintiff violated the BCSO General Order 7.1 § 2.9 Truthfulness. The Brady Committee reached this conclusion despite the fact that there was no *finding* of untruthfulness by Cunningham. Cunningham did allege a violation; however, Plaintiff's truthfulness was not an issue in Cunningham's investigation. The only finding regarding truthfulness is Roger's June 7th letter finding insufficient evidence to conclude that Plaintiff was untruthful. The Brady Committee stated they too found

COMPLAINT - Page 9

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1  insufficient evidence of untruthfulness. Nevertheless, the Brady Committee concluded that

2  Cunningham's finding in an official investigation was a mandatory disclosure under *Brady v*

3  *Maryland*.

4  32.

5  On or about June 19, 2018 Benton County District Attorney John Haroldson send the findings

6  of the Brady Committee to Sheriff Jackson. Haroldson upheld the finding that "Cunningham's findings

7  that Plaintiff was untruthful constitutes Brady material that must be disclosed in every instance where

8  he is called as a witness." Haroldson's conclusion also misstated Cunningham's allegation as an

9  official finding.

10  33.

11  On or about June 25, 2018 attorneys representing the BCDSA sent a letter to DA Haroldson

12  asking him to reconsider the Brady designation regarding Plaintiff and others. The BCDSA pointed

13  out Plaintiff was a witness, not a subject of Cunningham's investigation. The BCDSA further pointed

14  out that Cunningham asked BCSO if he should expand his investigation to encompass Plaintiff's

15  truthfulness and BCSO said they did not want the investigation to be expanded. The BCDSA informed

16  Haroldson the investigation merely raised an allegation of untruthfulness, an allegation which was not

17  sustained during the subsequent investigation into Plaintiff. DA Haroldson declined to reconsider

18  Plaintiff's Brady designation.

19  34.

20  Plaintiff felt that both investigations were improperly based on protected union and first

21  amendment activities and were retaliatory in nature. Plaintiff further came to believe that certain high-

22  ranking union members were working against Plaintiff and colluding with management personnel to

23  hurt Plaintiff. Plaintiff lost any confidence that the union to stand up for Plaintiff's rights in the face

24  of the illegal retaliation. Plaintiff began working with his private attorney to file an unfair labor

25  / / /

26  COMPLAINT - Page 10                                                          2018-115

1    practices ("ULP") complaint against both the County and the Union. The union was well aware that

2    Plaintiff wanted a ULP complaint filed on his behalf.

3                                          35.

4          On or about November 19, 2018 Plaintiff, through his attorneys, filed a ULP complaint

5    against his employer and the union for violations of state law. On or about January 29, 2019

6    Plaintiff, through his attorneys, sent notices pursuant to ORS 30.275 to Defendants.

7                                          36.

8          On or about October 31, 2018 Plaintiff received a notice of investigation for a new internal

9    investigation. This investigation was further retaliation for Plaintiff's constitutionally protected

10   activities and subsequent activities including his planned ULP complaint. This investigation was

11   ostensibly based on a citizen complaint from a Benton County resident regarding Plaintiff's arrest of

12   her son. Plaintiff was investigated for insufficient probable cause to arrest, failure to notify the parents

13   of the minor following arrest, failure to conduct a thorough investigation, and for failure to investigate

14   the counter complaint that the arrest was based on a false report. The investigation was assigned to Lt.

15   Andy Franklin and Captain Dave Snippen from the Linn County Sheriff's Office.

16                                         37.

17         The investigation centered on the events of the evening of October 9, 2018. Plaintiff was

18   dispatched in response to a report of an attempted burglary. A female minor reported a male suspect

19   had attempted to break into her house. She identified the suspect as a person known to her from high

20   school. Plaintiff located the suspect after midnight at his residence. The suspect denied the attempt

21   and offered an alibi, he was at a GED class at the time alleged. The suspect was already on parole as

22   a juvenile offender and had an ankle bracelet with a GPS tracker. Plaintiff documented in his report

23   he had a subjective lack of confidence in GPS accuracy and reliability. Plaintiff spoke to a probation

24   / / /

25   / / /

26   COMPLAINT - Page 11                                                          2018-115

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1   officer who confirmed the suspect was at the GED location until 5:53 p.m. and was at his residence at

2   6:00 p.m. Plaintiff did not ask the officer about the reliability of GPS, nor did the officer volunteer

3   that information.

4                                          38.

5          Plaintiff was told by Benton County Juvenile Detention that if he had probable cause he should

6   take the suspect into custody and do additional investigation in the morning rather than merely citing

7   him and releasing him. Plaintiff took the suspect to the Linn Benton Juvenile Detention Center. The

8   next morning Plaintiff did additional investigation including interviewing the suspect's grandmother,

9   who picked him up from the GED class and took him home. Plaintiff also contacted the probation

10  officer and obtained a more detailed explanation of the reliability and accuracy of the GPS system.

11  Plaintiff followed up with the complainant/victim and obtained a firm time from her of when the

12  attempted break in happened. Plaintiff documented in his report his subjective belief that the GPS was

13  inaccurate, and that the complainant was certain of the suspect's identity. Plaintiff did not contact the

14  suspects mother.

15                                         39.

16         The suspect had been booked into the detention center early the morning of October 10th. His

17  mother had been working an overnight shift and got of work approximately 7:30 a.m. on  October 10th.

18  She had a voicemail on her phone from the detention center, the voicemail was from the early hours

19  of that morning and was likely left around the same time as the suspect's booking. She was able to

20  contact the detention center and confirm that her son was in custody for attempted burglary. On

21  October 11th at 11:19 a.m. a judge dismissed the burglary charge and the suspect was released an hour

22  later. No charges were brought relating to this incident.

23  / / /

24  / / /

25  / / /

26  COMPLAINT - Page 12                                                              2018-115

40.

On or about December 13, 2018 Plaintiff was required to attend an interview with Lt. Franklin. Plaintiff had indicated his intent for his private attorney to accompany him as a representative. This request was initially honored, and the interview time was coordinated with Plaintiff's attorney. Two days before the interview Sheriff Jackson contacted Plaintiff's attorney and informed him that he would be excluded from the interview. Plaintiff's attorney indicated this would be a violation of ORS 236.360(2)(b) which provides a "public safety officer may have a representative *of the officer's choosing* present at the interview." (emphasis added) Despite this warning, Defendant Jackson persisted in barring Plaintiff's attorney from being present during the questioning.

41.

Plaintiff attended the interview with his union rep, and Plaintiff's attorney was not allowed to be in the room during the interview. Plaintiff was questioned at length regarding the night in question and his subjective decision making that night. Plaintiff was allowed to have Ms. Lovik present as his BCDSA representative. Plaintiff had filed his ULP complaint partially against the BCDSA and despite the open and obvious conflict of interest, the BCDSA and their attorneys refused to acknowledge the conflict or taken any remedial action. The BCSO refused to allow Plaintiff a representative of his choosing even in light of pending litigation against the BCDSA and the BCSO.

42.

The investigation concluded that the first offense investigated, lack of probable cause for arrest, was unfounded. A finding of "Unfounded" means that the allegation is false or meritless. "Based on the facts of the investigation, there is no basis to the allegation." Plaintiff believed the timeline for the alleged attempted burglary was loose, and the suspect had an opportunity to commit the offense even though he had an alibi and ankle monitor. Plaintiff also believed the suspect gave evasive answers to questions and that the GPS data was unreliable. Therefore, even BCSO agreed that Plaintiff had probable cause to make the initial arrest.

COMPLAINT - Page 13

2018-115

43.

The investigation concluded that the second offense investigated, failure to notify the parents of a minor arrestee, was sustained. Plaintiff admitted he never contacted the suspect's mother because he forgot to do so. However, despite Plaintiff's failure to notify the mother, there were no facts or evidence that his omission was willful rather than merely negligent. Additionally, the suspect's mother received notice from the detention center at the time the suspect was booked so there was little to no prejudice from Plaintiff's failure to notify.

44.

The investigation concluded the third offense investigation, failure to conduct a thorough investigation, was sustained. The investigators found that Plaintiff had sufficient probable cause, but further investigation may have undermined or eliminated the probable cause. The investigators questioned why Plaintiff found it necessary to arrest the suspect that night, rather than wait to develop the investigation further. Given that the follow up investigation did provide exculpatory evidence for the suspect, it was assumed by the investigators that Plaintiff should have investigated further at nearly one in the morning. Plaintiff explained a major factor in his decision to arrest was the complainant's safety.

45.

The investigation concluded the fourth offense, failure to investigate the complainant for a false report, was unfounded. The suspect's mother was furious about her son's arrest and demanded the BCSO investigate the female who reported the attempted burglary. The investigation found no evidence which would support an investigation into the complainant. Plaintiff never had the subjective impression that the complainant was being untruthful or malicious in her report. She seemed genuinely shook by the incident and Plaintiff believed that she simply misidentified the suspect. Even after the incident, when she was questioned further, she remained adamant that it was the person initially identified.

COMPLAINT - Page 14

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

46.

On March 8, 2019 Plaintiff received notice of termination from the BCSO. Despite the investigators finding that Plaintiff had probable cause to arrest the suspect, Defendant Jackson's termination letter relitigated that issue and seems to conclude the probable cause was deficient. There were no allegations of untruthfulness in the internal investigation and no finding of untruthfulness made by the Linn County investigation. Curiously, Defendant Jackson accuses Plaintiff of "intentional untruthfulness or blatant disregard of the facts" in the preparation of the probable cause affidavit. This conclusion, which goes beyond the findings of the investigation, was used, in part, as a basis for termination. This investigation was a pretext to terminate Plaintiff in retaliation for engaging in protected activities.

47.

Plaintiff's termination came more than four months after the investigation was open in violation of the collective bargaining agreement. Allowing the investigation to go stale and then reopening it later is a violation of due process. The termination also was issued for conduct for which Plaintiff had already received progressive discipline in the form of counseling from his supervisor. Subsequent discipline for the same conduct is a violation of double jeopardy.

48.

The termination was not for just cause, as required by the collective bargaining agreement and Oregon public employment statutes because Defendant County failed to adhere to the tenet of progressive discipline. Defendant County used termination where a lower level of discipline should have been explored. Termination is an action of last resort, particularly where less harsh penalties can be imposed. Other employees in the CBSO have not been subjected to investigation or discipline for more severe actions.

/ / /

/ / /

COMPLAINT - Page 15

2018-115

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

49.

In early 2019 Plaintiff, and other employees of the BCSO became concerned that Defendant Jackson might have violated state election laws and the Benton County Charter. It had become common knowledge in the BCSO that Jackson had purchased a residence in Lincoln County on the coast and was commuting to the BCSO from this new residence. On information and belief, this residence was purchased by Jackson in later 2017 using a VA-backed loan. On information and belief, the mortgage documents Jackson signed required him to occupy this Lincoln County residence as his primary residence to maintain eligibility for the loan.

50.

At or around the same time as this real estate purchase, Defendant Jackson signed his election application to run for Sheriff. In his application he had to truthfully list a residence in Benton County and sign an attestation that the filing was true and correct under penalty of felony. The Benton County Charter requires the Sheriff be a Benton County voter at the time of his election and to maintain his residency in Benton County throughout his tenure. Defendant Jackson used a Benton County address on his application. Oregon election laws do not allow an elector to be simultaneously registered in two jurisdictions. At the time of his election, Defendant Jackson was a resident of Lincoln County, Oregon.

51.

Plaintiff, by and through his attorney, brought this matter to the attention of the Secretary of State's office as well as the Benton County Elections Department. Plaintiff caused this notice to be sent via facsimile to Benton County on the morning of March 8th. Plaintiff believes the decision to terminate him was partly based on this complaint.

/ / /

/ / /

/ / /

/ / /

COMPLAINT - Page 16

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

**FIRST CLAIM FOR RELIEF:**

**Violation of Federal Constitutional Rights 42 U.S.C. § 1983**

<u>Count One: Violation of Right to Free Speech – Public Employee</u>

52.

Plaintiff re-alleges all paragraphs previously alleged.

53.

Plaintiff's activities related to Sgt. Peterson's potential run for Sheriff, the BCDSA Facebook page, and his critiques of Sheriff Jackson and the BCDSA board members are protected acts under the 1st and 14th Amendments.

54.

Elections, representation, and political organizing are matters of public concern.

55.

Plaintiff's acts described herein were motivating factors for one or more of the following retaliatory actions: Defendant Jackson's decision to investigate Plaintiff for the statements given to Cunningham in his Feb 2nd interview; Defendant Jackson's notice to DA Haroldson that Plaintiff was implicated for untruthfulness; Defendant Jackson's decision to investigate Plaintiff for the October 2018 arrest; Defendant Jacksons decision to deny Plaintiff access to his own attorney; and Defendant Jackson's decision to terminate Plaintiff.

56.

As a result of the above-described actions, Plaintiff has suffered damages totaling at least $1 million, including lost wages and benefits, lost economic potential, harm to reputation, emotional distress, and incurrence of attorney fees and other costs.

57.

Plaintiff has incurred attorney's fees and costs in pursuing this claim.

COMPLAINT - Page 17

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

Count Two: Denial of Rights Freedom of Speech
Local Governing Body Based Upon Official Policy, Practice, or Custom
(Benton County Sheriff's Office and Benton County)

58.

Plaintiff re-alleges all paragraphs previously alleged.

59.

Defendant Jackson's previously outlined retaliatory acts and policies constituted an unwarranted denial of Plaintiff's free speech constitutional rights.

60.

Defendant Jackson, as the elected Sheriff for Benton County, acted under color of law and in his official capacity at all times relevant to this complaint.

61.

At all times relevant, Defendant Jackson was a final policy maker for the Benton County Sheriff's Office and Benton County. There is sufficient information and belief to allege that it was Defendant Jackson's policy to harass, ostracize, and investigate individuals in the Benton County Sheriff's office if they reported unlawful or unconstitutional activities or presented an electoral threat to Sheriff Jackson.

62.

As a result of the above-described actions, Plaintiff has suffered damages totaling at least $1 million including lost wages and benefits, lost economic potential, harm to reputation, emotional distress, and incurrence of attorney's fees and other costs.

63.

Plaintiff has incurred attorney's fees and costs in pursuing this claim.

/ / /

/ / /

/ / /

COMPLAINT - Page 18

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1

**SECOND CLAIM FOR RELIEF**

2

**Unlawful Employment Practice/Public Employee Whistleblower**

3

**ORS 659A.203(1)(b)(A) and (B)**

4

64.

5

Plaintiff re-alleges all previously alleged paragraphs.

6

65.

7

Plaintiff has incurred attorneys' fees and costs in pursuing this claim.

8

66.

9

Plaintiff has satisfied the notice requirements of the Oregon Tort Claims Act.

10

67.

11

In violation of the Oregon Unlawful Employment Practices and Whistleblowing Statute, ORS

12

659A.203, Defendant Jackson, BCSO, the County, and the County's agents retaliated against Plaintiff

13

because Plaintiff spoke out against the use of internal investigations to retaliate for election activities,

14

the collusion between certain union leaders and Defendant Jackson, filed a ULP complaint against the

15

Defendants and spoke out against Defendant Jackson's violation of state election laws and the Benton

16

County Charter.

17

68.

18

Plaintiff's participation in the above described actions was a motivating factor for one or more

19

of the following retaliatory actions in violation of ORS 659A.203(a)(b)(A) and (B): Defendant

20

Jackson's decision to investigate Plaintiff for the statements given to Cunningham in his Feb 2nd

21

interview; Defendant Jackson's notice to DA Haroldson that Plaintiff was implicated for

22

untruthfulness; Defendant Jackson's decision to investigate Plaintiff for the October 2018 arrest;

23

Defendant Jacksons decision to deny Plaintiff access to his own attorney; and Defendant Jackson's

24

decision to terminate Plaintiff.

25

/ / /

26

COMPLAINT - Page 19

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

69.

As a result of the Constitutional violations and Tortious acts listed in the above claims for relief, Plaintiff suffered mental and emotional distress, economic damages and loss of future income. The extent of Plaintiff's damages will be more fully proven at trial.

70.

Plaintiff is entitled to a declaration that Defendants' conduct violated ORS 659A.203.

**THIRD CLAIM FOR RELIEF**

**Unlawful Employment Practice/Public Employee Whistleblower**

**ORS 659A.199**

71.

Plaintiff re-alleges all previously alleged paragraphs.

72.

Plaintiff has incurred attorneys' fees and costs in pursuing this claim.

73.

Plaintiff has satisfied the notice requirements of the Oregon Tort Claims Act.

74.

In violation of the Oregon Unlawful Employment Practices and Whistleblowing Statute, ORS 659A.199, Defendant Jackson, BCSO, the County, and the County's agents retaliated against Plaintiff because Plaintiff spoke out against the use of internal investigations to retaliate for election activities, the collusion between certain union leaders and Defendant Jackson, filed a ULP complaint against Defendants, and spoke out against Defendant Jackson's violation of state election laws and the Benton County Charter.

75,

Plaintiff's participation in the above described actions was a motivating factor for one or more of the following retaliatory actions in violation of ORS 659A.203(a)(b)(A) and (B): Defendant

COMPLAINT - Page 20                                                          2018-115

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1  Jackson's decision to investigate Plaintiff for the statements given to Cunningham in his Feb 2nd

2  interview; Defendant Jackson's notice to DA Haroldson that Plaintiff was implicated for

3  untruthfulness; Defendant Jackson's decision to investigate Plaintiff for the October 2018 arrest;

4  Defendant Jackson's decision to deny Plaintiff access to his own attorney; and Defendant Jackson's

5  decision to terminate Plaintiff.

6                                          76.

7         As a result of the Constitutional violations and Tortious acts listed in the above claims for

8  relief, Plaintiff suffered mental and emotional distress, economic damages and loss of future income.

9  The extent of Plaintiff's damages will be more fully proven at trial.

10                                         77.

11        Plaintiff is entitled to a declaration that Defendants' conduct violated ORS 659A.199.

12                          **FOURTH CLAIM FOR RELIEF**

13        **Unlawful Employment Practice/Social media account privacy**

14                         **ORS 659A.330(1)(a)**

15                                         78.

16        Plaintiff re-alleges all previously alleged paragraphs.

17                                         79.

18        Plaintiff has incurred attorneys' fees and costs in pursuing this claim.

19                                         80.

20        Plaintiff has satisfied the notice requirements of the Oregon Tort Claims Act.

21                                         81.

22        Defendants required Plaintiff to disclose his personal Facebook password in the February 2,

23  2018 interview. Plaintiff offered multiple times to access Facebook on his phone to refresh his

24  recollection and Cunningham instructed him not to at that time. At the close of the interview

25  Cunningham stated "So, uh, I'm gonna need your Facebook page … password and ... your personal

26  COMPLAINT - Page 21                                              2018-115

email. And what I'm gonna do is have you write that on a separate sheet of paper." He continued "And, uh, we'll do the extraction if they can swing it now … when I'll let you know that we looked at it I urge you to change your password … for your security."

82.

ORS 569A.330(1)(a) prohibits employers from requiring an employee to disclose their password or other means of authentication to a personal social media account.

83.

As a result of the Constitutional violations and Tortious acts listed in the above claims for relief, Plaintiff suffered mental and emotional distress, economic damages and loss of future income. The extent of Plaintiff's damages will be more fully proven at trial.

84.

Plaintiff is entitled to a declaration that Defendants' conduct violated ORS 659A.330.

## FIFTH CLAIM FOR RELIEF

### Peace Officer Bill of Rights/Right to representative of employee's choosing

### ORS 236.360(2)(b)

Count One: March 29, 2018 Interview

85.

Plaintiff re-alleges all previously alleged paragraphs.

86.

Plaintiff has incurred attorneys' fees and costs in pursuing this claim.

87.

Plaintiff has satisfied the notice requirements of the Oregon Tort Claims Act.

88.

Plaintiff was discouraged by his union vice-president from bringing a private attorney to his March 2018 interview. Plaintiff was denied access to a representative of his choosing in violation of ORS 236.360(2)(b).

COMPLAINT - Page 22

2018-115

89.

As a result of the Constitutional violations and Tortious acts listed in the above claims for relief, Plaintiff suffered mental and emotional distress, economic damages and loss of future income. The extent of Plaintiff's damages will be more fully proven at trial.

90.

Plaintiff is entitled to a declaration that Defendants' conduct violated ORS 236.360.

Count Two: December 13, 2018 Interview

91.

Plaintiff re-alleges all previously alleged paragraphs.

92.

Plaintiff has incurred attorneys' fees and costs in pursuing this claim.

93.

Plaintiff has satisfied the notice requirements of the Oregon Tort Claims Act.

94.

Defendants initially agreed to allow Plaintiff to choose his own representative; however, they reneged on this and barred Plaintiff from having access to this chosen representative in his December 2018 interview. Plaintiff was denied access to a representative of his choosing in violation of ORS 236.360(2)(b).

95.

As a result of the Constitutional violations and Tortious acts listed in the above claims for relief, Plaintiff suffered mental and emotional distress, economic damages and loss of future income. The extent of Plaintiff's damages will be more fully proven at trial.

96.

Plaintiff is entitled to a declaration that Defendants' conduct violated ORS 236.360.

/ / /

COMPLAINT - Page 23

2018-115

**SIXTH CLAIM FOR RELIEF**

**Peace Officer Bill of Rights/Right to representative of employee's choosing**

**ORS 236.360(1)**

Count One: March 29, 2018 Interview
(Benton County Sheriff's Office and Benton County)

97.

Plaintiff re-alleges all previously alleged paragraphs.

98.

Plaintiff has incurred attorneys' fees and costs in pursuing this claim.

99.

Plaintiff has satisfied the notice requirements of the Oregon Tort Claims Act.

100.

Defendant County and the BCSO failed to institute written procedures to implement the provisions of the Oregon Peace Officer Bill of Rights, ORS 236.350 to 236.370, as required by ORS 236.360(1).

101.

The failure of Defendants to comply with ORS 236.360(1) exposed Plaintiff to an interview in March 2018 without the assistance of his chosen representative.

102.

As a result of the Constitutional violations and Tortious acts listed in the above claims for relief, Plaintiff suffered mental and emotional distress, economic damages and loss of future income. The extent of Plaintiff's damages will be more fully proven at trial.

103.

Plaintiff is entitled to a declaration that Defendants' conduct violated ORS 236.360.

/ / /

/ / /

COMPLAINT - Page 24

2018-115

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

Count Two: December 13, 2018 Interview
(Benton County Sheriff's Office and Benton County)

104.

Plaintiff re-alleges all previously alleged paragraphs.

105.

Plaintiff has incurred attorneys' fees and costs in pursuing this claim.

106.

Plaintiff has satisfied the notice requirements of the Oregon Tort Claims Act.

107.

Defendant County and the BCSO failed to institute written procedures to implement the provisions of the Oregon Peace Officer Bill of Rights, ORS 236.350 to 236.370, as required by ORS 236.360(1).

108.

The failure of Defendants to comply with ORS 236.360(1) exposed Plaintiff to an interview in December 2018 without the assistance of his chosen representative.

109.

As a result of the Constitutional violations and Tortious acts listed in the above claims for relief, Plaintiff suffered mental and emotional distress, economic damages and loss of future income. The extent of Plaintiff's damages will be more fully proven at trial.

110.

Plaintiff is entitled to a declaration that Defendants' conduct violated ORS 236.360.

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT - Page 25

2018-115

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

**SEVENTH CLAIM FOR RELIEF**

**42 USC § 1983 – Fourteenth Amendment**

Count One: Violation of Plaintiff's Procedural and Substantive Due Process Rights

(All Defendants)

111.

Plaintiff re-alleges all paragraphs previously alleged.

112.

By and through the actions and omissions described above, Defendants deprived Plaintiff of his Fourteenth Amendment rights preventing deprivation of his constitutionally protected rights without due process of law, causing him harm.

113.

Plaintiff has a property interest in his job, as he has a legitimate entitlement to continued employment with his public employer, as well as fair and equal access to overtime and promotional and training opportunities. This claim to entitlement arises out of Benton County's promises of specific treatment in specific circumstances, including disciplinary action implemented upon existence of just cause, made in County and Department disciplinary policies, and the collective bargaining agreement.

114.

Defendants violated due process by subjecting Plaintiff to additional discipline, termination, after he had already been disciplined for the same acts by his supervisor. This is a violation of the prohibition on double jeopardy. Defendants further violated due process by allowing the investigation into Plaintiff's arrest of a juvenile suspect to go stale and only reviving it after several months had passed. Defendants further violated due process by conspiring with union representatives to deprive Plaintiff of a fair investigation and fair representation.

/ / /

/ / /

COMPLAINT - Page 26

2018-115

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

115.

Defendants then deprived Plaintiff of his constitutionally protected interests without due process of law when they terminated Plaintiff without just cause, depriving him of regular and overtime pay (an "economic sanction"), reporting him to the Benton County DA for Brady disclosure, and effectively ending his employability as a police officer and his ability to transfer laterally to a different department, thereby directly impacting his interest in pursuing law enforcement as a profession elsewhere. Defendants continue to deprive Plaintiff of these interests without due process to this day.

116.

As a direct and proximate result of the acts and omissions of Defendants complained of herein, Plaintiff has suffered, and continues to suffer, economic damages including lost wages, lost overtime work, lost training and promotion opportunities, advancement, and disqualification from testifying in the course of his employment. Such injuries are permanent and continuing, and capable of being determined at trial.

117.

As a further direct and proximate result of the acts and omissions complained of herein, Plaintiff has suffered, and continues to suffer mental pain and suffering, humiliation, worry, anxiety, fear, loss of earning capacity, and loss of personal and professional reputation, entitling him to an award of compensatory non-economic damages in an amount to be determined at trial.

118.

Plaintiff seeks compensatory and punitive damages against the County and BCSO.

/ / /

/ / /

/ / /

/ / /

COMPLAINT - Page 27

2018-115

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1

<u>Count Two: Violation of Plaintiff's Right to Equal Protection</u>

2

<u>(All Defendants)</u>

3

119.

4

Plaintiff re-alleges all paragraphs previously alleged.

5

120.

6

Defendant Jackson, as the Benton County Sheriff, acted under color of law and his official

7

capacity at all times relevant to this complaint.

8

121.

9

On information and belief, other deputies have engaged in substantially similar behavior to

10

Plaintiff in conducting investigations, making arrests, and failing to notify parents of minors arrested.

11

122.

12

On information and belief, no other BCSO deputies were investigated or disciplined with

13

termination as a result of said behavior.

14

123.

15

On information and belief, no other BCSO deputies were placed on the *Brady* list of mandatory

16

disclosures where no *finding* of untruthfulness has been made.

17

124.

18

On information and belief, the BCSO targeted Plaintiff based on his past participation in

19

constitutionally and statutorily protected activities, his filing of a ULP against his employer, and

20

lodging a complaint of election violations against Defendant Jackson.

21

125.

22

The County and the BCSO's actions violate the Equal Protection Clause of the Fourteenth

23

Amendment.

24

/ / /

25

/ / /

26

COMPLAINT - Page 28

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

126.

Defendants' conduct involved a reckless disregard or callous indifference to Plaintiff's constitutional rights. Defendants' malicious, wanton, or oppressive acts are within the standards for assessing punitive damages.

127.

As a further direct and proximate result of the acts and omissions complained of herein, Plaintiff has suffered, and continues to suffer mental pain and suffering, humiliation, worry, anxiety, fear, lost wages, loss of earning capacity, and loss of personal and professional reputation, entitling him to an award of compensatory non-economic damages in an amount to be determined at trial.

128.

Plaintiff has incurred attorney's fees and costs in pursuing this claim.   Plaintiff is entitled to attorney fees, expert witness costs, litigation costs, and prejudgment interest.

WHEREFORE Plaintiff pray as follows:

1.  Finding that Defendants violated Plaintiff's constitutional right to Free Speech;

2.  Finding that Defendants violated Plaintiff's constitutional right to due process;

3.  Finding that Defendants violated Plaintiff's constitutional right to equal protection;

4.  Judgment against Defendants for economic losses which will fully compensate Plaintiff for Plaintiff's economic damages in an amount to be determined by a jury;

5.  Judgment against Defendants for non-economic losses to Plaintiff for the constitutional violations herein in the amount of at least $1,000,000.00, or an amount to be proven at trial;

6.  Judgment against Defendants for deterrence damages in a fair and reasonable amount to be proven at trial;

/ / /

/ / /

COMPLAINT - Page 29

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

7.  Equitable relief, including but not limited to injunctive relief; and

8.  Judgment for costs, interests, attorney fees and such other and further relief as the Court deems just and equitable.

DATED this 10th day of July 2019.

THENELL LAW GROUP, P.C.

By:    */s/ Daniel E. Thenell*
Daniel E. Thenell, OSB No. 971655
E-mail:  dan@thenelllawgroup.com
Emerson Lenon, OSB No. 123728
E-mail:  emerson@thenelllawgroup.com
Telephone: (503) 372-6450
*Of Attorneys for Plaintiff*

COMPLAINT - Page 30

2018-115