IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC KONZELMAN, an individual,

    Plaintiff,

  v.

JEFFREY SCOTT JACKSON AS
SHERIFF OF BENTON COUNTY,
in his individual and official
capacity, BENTON COUNTY a
political subdivision of the State of
Oregon,

    Defendants.

Case No. 6:19-cv-01072-MC

OPINION AND ORDER

_____

MCSHANE, Judge:

    Plaintiff Eric Konzelman brings this employment action against defendants Jeffery Scott Jackson and Benton County. Generally, Konzelman alleges Defendants retaliated against him after Konzelman backed a potential challenger to Jackson, the Sheriff of Benton County. Defendants move to dismiss claims five and six (i.e., Konzelman's claims under Oregon's Peace Officer Bill of Rights). Defs.' Mot. Dismiss, ECF No. 10. As discussed below, Defendants' motion to dismiss is GRANTED.

1 – OPINION AND ORDER

# BACKGROUND[1]

At all relevant times, Konzelman was a deputy for the Benton County Sheriff's Office (BCSO) and Defendant Jackson was the elected sheriff of Benton County. Compl. ¶ 12, 13. At all relevant times, Konzelman was a member of the Benton County Deputy Sheriff's Association (BCDSA). Compl. ¶ 14.

In June 2017, Konzelman and other BCDSA members discussed BCSO Sergeant Dave Peterson possibly challenging Jackson in the 2018 election for sheriff. Compl. ¶ 14. Around this time, a Facebook page was created for Sergeant Peterson's campaign. Compl. ¶ 14. Konzelman administered the page. Compl. ¶ 14.

In December 2017, Jackson sent an email to the Benton County District Attorney detailing a conversation Jackson had with members of the BCDSA who alleged that Sergeant Peterson and Deputy Brent Iverson agreed to file multiple grievances and initiate a vote of no confidence against Jackson. Compl. ¶ 17. One deputy informed Jackson "that a Facebook page had been created to vent frustrations about" him. Compl. ¶ 17.

The BCSO then opened an internal investigation into Sergeant Peterson and Deputy Iverson. Compl. ¶ 18. Several BCSO employees were interviewed, including Konzelman. Compl. ¶ 18. Konzelman's interview took place on February 2, 2018. Compl. ¶ 19. Konzelman "was not previously informed o[f] this interview and was not informed of his right to have representation with hi[m] in the interview. Plaintiff felt the interview was compelled." Compl. ¶ 19. When questioned about the Facebook page, Konzelman stated he did not recall if he created or administered it. Compl. ¶ 21. At the end of the interview, the investigator "directed Plaintiff to write down his username and password. Plaintiff felt compelled to comply with this direction

---

[1] At the motion to dismiss stage, I assume the truth of Konzelman's allegations.

2 – OPINION AND ORDER

and gave over the password to his personal Facebook account." Compl. ¶ 22.

On March 13, 2018, BCSO opened an internal investigation of Konzelman concerning his truthfulness about the Facebook page discussed in the previous interview. Compl. ¶ 23. Konzelman was placed on administrative leave. Before being interviewed, the Vice President of the BCDSA discouraged Konzelman from bringing his private attorney. Compl. ¶ 24. Unbeknownst to Konzelman, the Vice President of the BCDSA had previously provided Jackson with disparaging information about Konzelman. Compl. ¶ 23. Plaintiff "clearly communicated" his preference that Kim Lovik, the Secretary of the BCDSA serve as his representative. Compl. ¶ 24. The Vice President "continued to insert himself into the matter and actively kept information regarding the investigation from Lovik." Compl. ¶ 24.

On March 29, 2018, Konzelman sat for the interview with Lovik as his BCDSA association representative. Compl. ¶ 26. "Plaintiff again denied having significant memories of" the Facebook page. Compl. ¶ 26. Plaintiff acknowledged his Facebook account indicated "that he had scheduled the [Facebook] page for deletion," but stated he did not remember deleting the page because it "was not a significant event." Compl. ¶ 26. Three weeks after the interview, the Vice President sent an email to Lovik stating "[i]t is clear to all of us and all of them that [Plaintiff] was lying." Compl. ¶ 27 (alterations in original). On May 8, 2018, the Benton County District Attorney's Office Brady Review Committee concluded the investigator found Konzelman "violated the BCSO General Order 7.1 § 2.9 Truthfulness." Compl. ¶ 31.

> Plaintiff felt that both investigations were improperly based on protected union and first amendment activities and were retaliatory in nature. Plaintiff further came to believe that certain high-ranking union members were working against Plaintiff and colluding with management personnel to hurt Plaintiff. Plaintiff lost any confidence that the union [would] stand up for Plaintiff's rights in the face of the illegal retaliation. Plaintiff began working with his private attorney to file an unfair labor practices ("ULP") complaint against both the County and the Union.

> The union was well aware that Plaintiff wanted a ULP complaint filed on his behalf.

Compl. ¶ 34.

On October 31, 2018, Konzelman learned of a new internal investigation based on a citizen's complaint after Konzelman arrested her son. Compl. ¶ 36. On December 13, 2018, a BCSO Lieutenant interviewed Konzelman in regard to the new investigation. Compl. ¶ 40. "Plaintiff attended the interview with his union rep, and Plaintiff's attorney was not allowed to be in the room during the interview." Compl. ¶ 41. Lovik once again served as Konzelman's union representative during the interview. Compl. ¶ 41. "The BCSO refused to allow Plaintiff a representative of his choosing even in light of pending litigation [i.e., Konzelman's pending unfair labor practices complaint] against the BCSO and the BCSO." Compl. ¶ 41.

As noted, Konzelman brings claims five and six under Oregon's Peace Officer Bill of Rights. Konzelman alleges in claim five that the discouragement of having his private attorney present during the March 2018 interview, Compl. ¶ 88, and the denial of his private attorney's presence during the December 2018 interview, Compl. ¶ 94, are violations of ORS § 236.360(2)(b). Konzelman alleges in claim six that Benton County and the BSCO's failure "to institute written procedures to implement the provisions of the Oregon Peace Officer Bill of Rights" is a violation of ORS § 236.360(1). Compl. ¶¶ 100, 107. Defendants move to dismiss both claims.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual

allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendants argue ORS § 236.360—i.e., the Oregon Peace Officer Bill of Rights—does not apply to Konzelman as the BCDSA is subject to a collective bargaining unit ("CBA"). The Court agrees. ORS § 236.360 outlines the procedural requirements employers must follow for disciplinary actions involving public safety officers. As relevant here, an officer subject to an interview that could lead to discipline "may have a representative of the officer's choosing present at the interview." ORS 236.260(2)(b). However, the statute does not always apply to every officer. ORS § 236.370 lists several exceptions to the protections of ORS § 236.360. As relevant here, the protections of the Oregon Peace Officer Bill of Rights "do not apply to disciplinary action taken against public safety officers who are . . . [r]epresented in a collective bargaining unit if the collective bargaining agreement . . . provide[s] for procedures and safeguards of the sort provided for in [the Oregon Peace Officer Bill of Rights]." ORS § 236.370(6).

5 – OPINION AND ORDER

The BCDSA is subject to a CBA. ECF No. 11. Defendants argue that because there is a CBA, the ORS § 236.360 provisions do not apply—due to the exceptions in ORS 236.370(6) noted above—and claims five and six must be dismissed because they rely on ORS § 236.360.

Konzelman argues the ambiguity in the exception of ORS § 236.370(6) allows him to bring claims five and six. Specifically, Konzelman notes that ORS § 236.370(6)'s exclusion for a CBA providing "procedures and safeguards *of the sort provided for*" in the Oregon Peace Officer Bill of Rights has no statutory definition and Oregon courts have yet to define its meaning. Konzelman argues "of the sort provided for" means that the CBA must provide the legal equivalent of the procedures and safeguards found in ORS 236.360(2)(b). Next, Konzelman notes that ORS § 236.360(2)(b) provides that "[t]he public safety officer may have a representative of the officer's choosing present at the interview," whereas the CBA only provides the "right to have an *Association* representative of his/her choosing present during disciplinary hearings," CBA ¶ 23.4 (emphasis added). Konzelman concludes that because the CBA does not provide a legally equivalent right to representation, the exclusion contained in ORS § 236.370(6) does not apply and Defendants violated ORS § 236.360(2)(b)'s requirement that Konzelman have "a representative of [his] choosing present at the interview."

When constructing a statute, Oregon courts look to discern the legislature's intent by first considering its text and context. *Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 317 Or. 606, 610 (1993). To understand its text, courts often refer to dictionary definitions when a statute is left undefined by the legislature. *Jenkins v. Bd. of Parole,* 356 Or. 186, 194 (2014). Konzelman provided the *Merriam-Webster* definition of "sort:" "a group set up on the basis of *any* characteristic in common: CLASS or KIND." ECF No. 12, 2 (emphasis added). This

suggests a broad scope of what can be considered in a "sort;" if the members of the group share any characteristic in common, they meet the definition.

Applying this definition to the facts of claim five, the protection in section 23.4 of the CBA granting a deputy "the right to have an Association representative of his her/her choosing present during [the interview]"is "of the sort" of protection provided in ORS § 236.360(2)(b), which allows the deputy "a representative of the officer's choosing present at the interview." The statute and the CBA share the characteristic of allowing the presence of a representative in disciplinary hearings. Requiring that representative be a member of the BCDSA does not somehow mean this protection is not "of the sort" provided in ORS 236.360(2)(b). Because the CBA provides a protection "of the sort" contained in ORS 236.360(2)(b), Konzelman does not state a claim under that statute. *See* ORS 236.370(6) (noting ORS 236.360 does not apply to disciplinary actions of officers represented in a CBA providing safeguards "of the sort provided in" ORS 236.360).

That ORS 236.370(6) bars Konzelman's claim under ORS 236.360(2)(b) becomes crystal clear when examining the context of the statute. As noted, in addition to examining the text of the statute, Oregon courts also consider "the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes." *Portland Gen. Elec. Co,* 317 Or. at 611. When examining the context of the statute, courts recognize "that use of a term in one section and not in another section of the same statute indicates a purposeful omission[.]" *Id.*

Here the Court need only look a few sentences back from 236.370(6) for a telling example of a "purposeful omission." ORS § 236.370(3) provides that the Oregon Peace Officer Bill of Rights does not apply to officers who are "[u]nder a county or municipal civil service system which provides public safety officers with disciplinary action protections *at least*

7 – OPINION AND ORDER

*equivalent to* those provided under [the Oregon Peace Officer Bill of Rights]." (Emphasis added). That the legislature demanded protections "at least equivalent to" the safeguards of the Oregon Peace Officer Bill of Rights in one subsection, but only required protections "of the sort provided for" in the Oregon Peace Officer Bill of Rights for officers represented in a CBA in a different subsection, indicates the legislature's intent to not demand a perfect equivalency between the safeguards of ORS 236.260(2)(b) and the safeguards of a CBA. Konzelman therefore cannot state a claim for a violation of ORS 236.370.

Konzelman's sixth claim alleges BCSO violated ORS 236.360(1), which requires employers of peace officers to "adopt written procedures to implement the provisions of the Oregon Peace Officer Bill of Rights." Because ORS 236.360(2)(b) does not apply to Konzelman, the BCSO cannot be found liable for failing to adopt procedures to implement it.

## CONCLUSION

Defendants' motion to dismiss, ECF No. 10, is GRANTED. Because the relevant portions of the Oregon Peace Officer Bill of Rights do not apply to Konzelman, his claims based on a violation of those statutes are DISMISSED. As leave to amend would be futile, claims five and six are dismissed with prejudice.

IT IS SO ORDERED.

DATED this 18th day of October, 2019.

       /s/ Michael McShane      
Michael McShane
United States District Judge